John BERZAC, Relator,

v.

MARSDEN BUILDING MAINTENANCE CO., Respondent,

Department of Economic Security, Respondent,

and

Delia J. RECH (Noyes), Relator,

v.

McDONALD'S RESTAURANTS OF MINNESOTA, INC., Respondents,

Commissioner of Economic Security, Respondent.

Nos. 51588, 51419.

Supreme Court of Minnesota.

Nov. 6, 1981.

Southern Minn. Regional Legal Services, Martha A. Eaves and Bruce Beneke, St. Paul, for Berzac.

Mary E. Everett, St. Cloud Area Legal Services Assoc., Little Falls, for Rech.

Warren Spannaus, Atty. Gen., James A. Jorgensen, Sp. Asst. Atty. Gen., St. Paul, for Department of Economic Security.

---

## OPINION

**PER CURIAM.**

Employees-relators John Berzac (Case No. 51588) and Delia J. Rech (Noyes) (51419) obtained writs of certiorari to review their respective decisions of the Commissioner, Department of Economic Security, to the effect that each had voluntarily discontinued his/her employment without good cause attributable to the employer and was therefore disqualified from the receipt of unemployment compensation benefits. We reverse and remand to the department for proceedings consistent with this opinion.

Relator Berzac was employed as a janitor by the Marsden Building Maintenance Company for the period from October 1, 1979, until February 22, 1980, at a rate of compensation of $3.72 per hour for a 17½-hour week. During this time, he also worked full time for another employer, earning $7 per hour.

Claimant Berzac decided, based upon some minor health problems, that it was too difficult to hold two jobs at once and decided to quit his part-time job. He therefore gave notice to Marsden on February 7, 1980 that his termination would be effective on February 22, 1980. Coincidentally, on that same date, Berzac was laid off his full-time job without notice and found himself completely unemployed.

Relator Rech was employed on a part-time basis by McDonald's Restaurants for the period from October 29, 1979, through November 1, 1979, at a final rate of compensation of $2.90 per hour. The record reflects that she had taken this particular position because her primary employment as a school bus driver for L & K Ready Mix left her with free time around the noon hour. McDonald's hired her with the knowledge and understanding that this was a trial employment and was secondary to her driving job.

Claimant Rech worked at McDonald's for approximately 7 hours over a 3-day period but found that to arrive on time for this part-time job, she had to "rush" her kindergarten route. She therefore quit her job at McDonald's on November 1, 1979. At the time she filed her resignation notice with McDonald's, she had no knowledge that she was about to be laid off from her job as a school bus driver. The layoff by L & K occurred 10 days later.

In each of the cases presented, the employee, rendered totally unemployed, filed valid claim petitions attempting to secure unemployment compensation benefits. The record does not reflect whether the claim petitions were directed to each of the relators' employers and it is unclear whether those employers not named participated in the decisional process.

In each case, the claims deputy denied benefits, finding that the employee had voluntarily terminated his/her employment. The determinations were affirmed by the appeals tribunal and further review was sought from the representative of the commissioner. In affirming the prior decisions, the representative recognized the harshness of the result of its interpretation of Minn. Stat. § 268.09, subd. 1(1) (1980), but concluded that had the legislature intended to provide relief in unique cases such as those presented, it would have specifically addressed this factual setting. The practical effect of those decisions was that the employees, having voluntarily terminated their part-time positions, were automatically disqualified from the receipt of benefits from their full-time employers without regard to the criteria of section 268.09, subd. 1(1) as it related to those latter terminations.

The single issue is whether an individual, who voluntarily terminates one of multiple employment relationships and thereafter is unemployed by the remaining employer through no fault of the employee, is thereby rendered ineligible to receive unemployment compensation benefits from any source.

The department suggests that its interpretation of section 268.09, subd. 1(1) as applicable here has been in effect since 1951 and that it therefore has historical validity.

While the department and the claimants offer a number of unique interpretations of the governing legislation in an attempt to support their respective positions, it is our view that the resolution of this dispute lies in a more practical approach to section 268.-09, subd. 1(1).

Section 268.09, subd. 1(1) (1980) provides in pertinent part as follows:

An individual shall be disqualified for waiting week credit and benefits for the duration of his unemployment and until he has earned four times his weekly benefit amount in insured work if he is separated from employment under any of the following conditions:

(1) The individual voluntarily and without good cause attributable to the employer discontinued his employment with such employer.

In practical effect, the department has concluded that if an individual voluntarily discontinues but one of multiple employment positions, the disqualification of section 268.09, subd. 1(1) precludes the receipt of benefits from any employer, regardless of the circumstances creating the unemployment.

It is our view that the legislature could not have intended such an unfortunate result, particularly given the declared legislative intent to provide benefits for those who, through no fault of their own, are unemployed. *See Sajevic v. Greenbrier*

*Home, Inc.*, 298 Minn. 574, 576, 216 N.W.2d 864, 866 (1974). Instead, a reasonable interpretation of section 268.09, subd. 1(1) would be that the department consider and decide claim petitions, in the unique situations presented here, as they relate to each of the multiple employers. In that manner, the department could determine that, as to one employer, the termination was voluntary and without good cause attributable to the employer, but as to the other, the employee might well be entitled to receive unemployment compensation benefits.

As indicated, the record before us does not establish whether claims petitions were filed by these claimants against their respective full-time employers. The matters are therefore remanded to the commissioner for its determination of each employee's right to receive benefits as to each of their respective multiple employers. The department is instructed to examine the separate claim petitions upon their individual merits within the guidelines of section 268.09, subd. 1(1).

Reversed and remanded.