Kay STICKA, Relator,

v.

HOLIDAY VILLAGE SOUTH, Respondent,

Commissioner of Economic Security, Respondent.

and

Kay STICKA, Relator,

v.

JAM DAIRY, Respondent,

Commissioner of Economic Security, Respondent.

Nos. C6–83–857, C8–83–858.

Supreme Court of Minnesota.

June 1, 1984.

Roger N. Knutson, South St. Paul, for relator.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for respondent.

COYNE, Justice.

Employee-relator Kay Sticka obtained writs of certiorari to review separate decisions of the Commissioner, Department of Economic Security, that her voluntary discontinuance of two part-time jobs without good cause attributable to her part-time employers, following her involuntary termination from her principal employment, disqualified her from unemployment compensation benefits. We reverse and remand to the department for proceedings consistent with this opinion.

Relator is a structural engineer. For more than three years she was employed by an architectural firm at a salary of $10.65 per hour. When, in the fall of 1982, relator's employer reduced her hours of work to 35 hours per week, relator began working as a cashier at Jam Dairy two evenings per week at an hourly wage of $4.00. On October 9, 1982, relator took a second part-time job at Holiday Village. Relator worked there from five to 22 hours per week as a stock clerk earning $3.45 per hour. Holiday Village informed relator at the time of hire that it was a temporary job which would last only until Christmas.

Five days later, on October 14, 1982, relator's principal employer terminated her employment. The relator diligently sought employment as a structural engineer but could find no job openings in the metropolitan area. Convinced that she must expand her job search to other parts of the country, the relator voluntarily quit her part-time jobs on November 6th and 7th.

The relator filed her claim on October 17, 1982, after termination of her employment by her principal employer but while she still held the two part-time jobs. Some months after relator had quit her part-time jobs, the claims deputy denied all benefits and the appeals tribunal affirmed, finding that relator had voluntarily discontinued her employment. Jam Dairy was named as the employer in one of two separate proceedings; Holiday Village was named in the other. Relator's principal employer was not identified as her employer in either proceeding. The representative of the commissioner also affirmed and in the memorandum attached to his decision characterized the net result of the two proceedings as "tragic." He went on to remark, "The claimant can best be described as none other than a hard working industrious individual who did nothing other than that which was reasonable."

When relator was involuntarily terminated from her employment as a structural engineer, she became "unemployed," as that term is defined in Minn.Stat. § 268.04, subd. 23 (1982). The relator was eligible for "unemployment benefits, and—as the commissioner's representative noted—her continued part-time employment did not significantly affect the amount of the benefits to which she was entitled. Neverthe-

less, it is the department's position that relator's voluntary discontinuance of her part-time jobs totally disqualified her from benefits.

Applying Minn.Stat. § 268.09, subd. 1(1) (1982) in the converse of the situation presented here, we rejected a rigid interpretation of the statute in favor of a more practical approach. *Berzac v. Marsden Bldg. Maintenance Co.*, 311 N.W.2d 873 (Minn.1981). Berzac voluntarily quit his part-time job and, on his last day of part-time work, was laid off without notice from his full-time job. In *Berzac* we rejected the department's conclusion that if an individual voluntarily discontinues but one of multiple employment positions, he is disqualified pursuant to § 268.09, subd. 1(1) from the receipt of benefits from any employer, regardless of the circumstances creating the unemployment. We held that the department must consider and decide claim petitions, in the unique situation there presented, as they related to each of the multiple employers.

We reiterate our rejection of the department's construction of § 268.09, subd. 1(1), and also our view that the legislature did not intend such an unfortunate result. Furthermore, we include among the unique situations to which our decision in *Berzac* is applicable the situation presented here.

When relator's principal employment as a structural engineer was terminated, she became "unemployed." The character of that termination—whether the termination was involuntary and through no fault of her own or whether it was for a disqualifying reason, such as voluntary separation or misconduct—must be determined as of the date of termination. It is conceded that the relator was then eligible for compensation and that the circumstances of her separation from that employment did not disqualify her from benefits. Subsequent events are irrelevant to that deter-

mination since the relator cannot be disqualified for benefits for any acts or omissions which occur after her separation from employment with that employer. Minn. Stat. § 268.09, subd. 1(5) (1982).

Relator's retention of her part-time jobs neither plucked her from the ranks of the unemployed nor significantly reduced the benefits payable to her. In the light of the statutory provision for benefits for an eligible worker who is partially unemployed, Minn.Stat. §§ 268.04, subd. 23 and 268.07, subd. 2(3) (1982), the department's insistence that the statute does not provide for partial payment, that it is "an all or nothing proposition" is misguided. Since the relator qualified for at least partial benefits when she had part-time work, it makes no sense that on cessation of the part-time work for any reason, she should become disqualified from any and all benefits.[1] See *Fountain v. Hanlon*, 214 Neb. 700, 335 N.W.2d 319 (1983); *Gilbert v. Hanlon*, 214 Neb. 676, 335 N.W.2d 548 (1983).

As indicated above, although the relator's eligibility for benefits as a result of the termination of her employment as a structural engineer is undisputed, the record before us does not indicate whether or not a claim against that employer, unidentified in these proceedings, has been considered and decided. The matter is, therefore, remanded to the commissioner for determination of the relator's right to receive benefits based on termination of her principal employment (if that question has not previously been decided) and to compute the benefits, if any, to which the relator is entitled, adjusted according to the statutory guidelines.

Reversed and remanded.

---

1. Particularly is this true where, as here, it is likely that the part-time jobs would not be deemed "suitable employment" and that relator could decline an offer of employment as a dairy store cashier or a stock clerk without jeopardiz-

ing her qualification for unemployment benefits. Minn.Stat. § 268.09, subd. 2 (1982). *See Hendrickson v. Northfield Cleaners*, 295 N.W.2d 384, 386–7 (Minn.1980).