**Joan M. VALENTY, Relator,**

v.

**MEDICAL CONCEPTS DEVELOPMENT, INC., Commissioner of Jobs and Training, Respondents.**

**No. C0–92–974.**

Court of Appeals of Minnesota.

Nov. 3, 1992.

Review Granted Jan. 28, 1992.

Peter B. Knapp, St. Paul, for relator.

Medical Concepts Development, Inc., pro se.

Kent E. Todd, Minnesota Dept. of Jobs & Training, St. Paul, for respondent Com'r of Jobs and Training.

Considered and decided by PARKER, P.J., and SCHUMACHER and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Relator Joan Valenty seeks review of two decisions issued by a representative of respondent Commissioner of Jobs and Training. The Commissioner's representative concluded that Valenty voluntarily quit her job without good cause attributable to the respondent employer, and that Valenty was not able to work/available for work for two weeks in October 1991. Accordingly, the Commissioner's representative concluded that Valenty was not entitled to receive unemployment compensation benefits. We affirm in part and reverse in part.

## FACTS

Relator Joan Valenty was employed for several years as a registered dental assistant. Upon becoming unemployed in the summer of 1991, Valenty applied to the Department of Jobs and Training ("Department") for unemployment compensation benefits. The Department granted her claim, effective July 14, 1991.

In September 1991, a Department representative referred Valenty to a job with respondent Medical Concepts Development,

Inc. ("Medical Concepts"). The job involved light manufacturing work—a type of work Valenty had not previously performed. In addition, the job paid $3.50 less per hour than Valenty had been receiving as a dental assistant. Nevertheless, Valenty decided to apply for the job because she believed she might otherwise lose her entitlement to unemployment benefits.

Valenty applied for the job, stating on the job application form that she had problems with her back. The evidence indicates that Valenty has experienced back problems for several years, having undergone spinal fusion surgery in 1988 and additional surgery in 1989.

On the morning of October 1, 1991, Valenty reported for work at Medical Concepts. After filling out employment-related forms she began work, first applying adhesive patches to surgical drapes, then folding lightweight surgical drapes. In the afternoon, Valenty was assigned the task of folding larger surgical drapes. Valenty repetitively bent over a work table to fold the drapes and by the end of her shift her back was bothering her.

At approximately 3:20 p.m., Medical Concepts' president approached Valenty to see if she wanted to work overtime. At trial, the president recalled her response as follows:

And she says * * * this job was not what I expected it to be. * * * I'm not getting paid what I think I should be getting paid. And I really would like to get back as a dental assistant. My back * * * doesn't feel right to me. * * * [W]hy don't we just consider this a temporary position. * * * [I]t's not something that I want to do.

Upon leaving Medical Concepts, Valenty went home and applied ice to her back. Valenty characterized her back pain as 10 on a scale of 1 to 10. She was not advised by a physician to quit her job, however, and she took only extra-strength Tylenol for the pain.

Two days later, on October 3, Valenty went to her physician's office and obtained a statement from a physician's assistant

indicating that she was unable to work between October 1 and 3. Between October 4 and 15, 1991, Valenty continued to rest her back, but applied in person for 11 dental assistant jobs.

Valenty testified that it took two weeks for the pain to "finally settle down"; she rated the pain an eight during the first week and a seven during the second week. She explicitly testified, however, that she could have worked as a dental assistant, despite the pain, because that work does not increase the pain. She later also stated, however, "[N]o, I probably couldn't [have] worked after that time and I was unemployed at the time." In answer to the question, "So during that two weeks you don't feel that you were able to work?" Valenty responded "Yes." We take this as a reference to jobs other than work as a dental assistant. Valenty continued to seek work, and during the last week in October, she was offered and accepted a job as a dental assistant.

On October 5, 1991, the Department issued a determination that Valenty was unable to work between October 1 and 3, 1991. Accordingly, the Department determined that Valenty was ineligible to receive benefits for that time period.

On October 15, 1991, the Department issued a second determination that Valenty had voluntarily quit her job with Medical Concepts without good cause and without making reasonable efforts to retain her employment. The Department determined that Valenty was disqualified from receiving unemployment benefits.

Valenty appealed both determinations to a Department referee, who conducted a hearing. The referee took evidence and heard testimony by Valenty, Medical Concepts' president, and a group leader. Following the hearing, the referee issued two decisions, concluding, first, that Valenty had voluntarily quit her job without good cause, and second, that she had been unavailable for work between October 4[1] and 15, 1991. The referee affirmed both Department determinations denying Valenty unemployment benefits. Valenty appealed the referee's decisions to a Commissioner's representative, who affirmed both decisions.

Valenty has obtained a writ of certiorari, seeking review of the Commissioner's representative's decisions.

## ISSUES

I. Is Valenty eligible to receive unemployment benefits, despite leaving her employment with Medical Concepts, because the job was unsuitable for her and her wages there were less than her weekly unemployment benefit amount?

II. Does the record support the Commissioner's representative's determination that Valenty was unable to work/unavailable for work between October 4 and October 15, 1991?

## ANALYSIS

### I.

Resolution of this appeal requires analysis and harmonization of several provisions within the unemployment compensation statutes. Those provisions involve: (1) good cause for a voluntarily separation from employment; (2) suitability of offered employment; and (3) the definition of "unemployment."

An individual who voluntarily quits a job without good cause attributable to the employer is disqualified from receiving unemployment benefits. Minn.Stat. § 268.09, subd. 1(a) (1990). Here, the Commissioner's representative concluded that Valenty voluntarily quit her job without good cause attributable to Medical Concepts, and therefore was disqualified from receiving unemployment benefits.

Valenty argues that the position at Medical Concepts was not "suitable" for her because she is certified as a dental assistant. *See* Minn.Stat. § 268.09, subd. 2

---

1. The referee actually determined that Valenty was unavailable for work between October 2 and 15, 1991. The record supports the determination that Valenty was unavailable on October

2 and 3; therefore, we confine our analysis in this opinion to the issue whether Valenty was available for work/able to work between October 4 and 15, 1991.

(1990) (unemployed individual is disqualified from receiving unemployment benefits upon failure to apply for or accept "suitable" work or reemployment).

A suitability determination requires, among other factors, consideration of

> the degree of risk involved to health * * *, physical fitness and prior training, experience, length of unemployment and prospects of securing local work in the individual's customary occupation.

Minn.Stat. § 268.09, subd. 2(a).

 The record in this case establishes as a matter of law that the job at Medical Concepts was not suitable for Valenty within the statutory meaning. Valenty argues that if she was not required to apply for or accept the job at Medical Concepts, she should not be penalized for trying the job and then quitting. We note that this issue was not raised before the Commissioner's representative. Ordinarily, we will not consider issues that have not been raised below. *See Jaakola v. Duluth/Superior Area Educ. Television Corp.*, 374 N.W.2d 215, 217 (Minn.App.1985) (argument not presented below was improperly raised on appeal). However, the issue here—whether suitability of a job may be considered when determining if an individual had good cause to quit—is a purely legal question, and does not involve a determination of disputed facts. An appellate court may consider a new issue on appeal if the issue

> is decisive of the entire controversy and where there is no possible advantage or disadvantage to either party in not having a prior ruling on the question. No party is disadvantaged when the facts are undisputed.

*Harms v. Independent Sch. Dist. No. 300*, 450 N.W.2d 571, 577 (Minn.1990) (citations omitted).

The Commissioner argues that the question of suitability is not relevant in this case because Valenty accepted the position at Medical Concepts and then quit. The Commissioner cites *McDonnell v. Anytime Temporaries*, 349 N.W.2d 339 (Minn.App. 1984), where an employee reluctantly accepted a temporary position and then quit without completing the assignment. The *McDonnell* court stated:

> Relator argues she should not be disqualified for quitting a job where she would not have been disqualified * * * had she refused to accept the same job.

> \* \* \* \* \* \*

> [T]he Commissioner correctly concluded the issue of suitability was irrelevant. Unsuitability of the work is not a statutory exception to the voluntary quit provision, Minn.Stat. § 268.09, subd. 1(1) (Supp.1983).

*Id.* at 341.

While we re-affirm the conclusion that unsuitability of work is not a stated "exception" to the voluntary quit provision, we are of the opinion that the "unsuitability" and "voluntary quit" provisions must be considered together. *See* Minn.Stat. § 645.17 (1990) ("The legislature intends the entire statute to be effective and certain.").

Both prior to and since our decision in *McDonnell*, Minnesota courts have reviewed situations somewhat similar to this case. In *Sticka v. Holiday Village S.*, 348 N.W.2d 761 (Minn.1984), an employee was involuntarily separated from full-time work and subsequently accepted and then quit two part-time jobs. The supreme court concluded that the employee's voluntary termination of the part-time jobs did not disqualify her from receiving unemployment benefits in light of a statutory provision authorizing benefits for a worker who is partially unemployed. *Id.* at 763. The *Sticka* court stated:

> When relator was involuntarily terminated from her employment as a structural engineer, she became "unemployed." * * * The relator was eligible for unemployment benefits, and * * * her continued part-time employment did not significantly affect the amount of benefits to which she was entitled.

*Id.* at 762 (citation omitted).

In *Holman v. Olsten Corp.*, 389 N.W.2d 236, 241 (Minn.App.1986), this court applied the reasoning in *Sticka* and concluded that an individual did not become ineligible for

unemployment benefits when, following her separation from full-time employment, she took and then quit a part-time job. In *Holman*, we stated:

> Even while working [part-time] for Olsten, Holman was "unemployed" within the meaning of the unemployment compensation laws * * *. As in *Sticka*, the legislature could not have intended the unfortunate result of disqualifying relator; she has remained unemployed but has been willing to try less than suitable work and by so doing has partially alleviated the state's burden of support until she is once again able to join the ranks of the employed.

*Id.*

■ In this case, after Valenty became unemployed, she accepted full-time work at Medical Concepts, but quit the day she started. After that day of employment at Medical Concepts, Valenty remained "unemployed" within the statutory definition cited in *Sticka* and *Holman:*

> An individual shall be deemed "unemployed" in any week * * * of less than full time work if the wages payable with respect to such week are less than the individual's weekly benefit amount.

Minn.Stat. § 268.04, subd. 23 (1990). Obviously, Valenty's total wages for the day she worked at Medical Concepts would have been less than her weekly unemployment benefit amount. Consistent with the policy of *Sticka* and *Holman*, we conclude that where an unemployed individual, such as Valenty, briefly attempts an unsuitable job, even if full-time, she is not disqualified from receiving unemployment benefits if her total weekly wages received from the attempted job are less than her weekly unemployment benefit amount.

Like the employee in *Holman*, Valenty "has been willing to try less than suitable work." Again, we cannot believe the legislature intended the unfortunate result of disallowing unemployment benefits to an employee who has attempted unsuitable

work in an effort to remove herself from the ranks of the unemployed.[2]

In light of our decision that the job at Medical Concepts was unsuitable for Valenty, we need not address the claim that, as a result of Valenty's back problems, she is entitled to unemployment benefits under the "serious illness exception" to disqualification. *See* Minn.Stat. § 268.09, subd. 1(c)(2) (1990) (an individual is not disqualified from receiving unemployment benefits if separated "due to personal, serious illness provided that such individual has made reasonable efforts to retain employment").

## II.

Even if Valenty was separated from work for non-disqualifying reasons, she may be ineligible to receive unemployment benefits if she was not "able to work," or not "actively seeking work." *See* Minn. Stat. § 268.08, subd. 1(3) (1990). For each day the individual is unable to work/unavailable for work, the individual's weekly benefit is reduced one-fifth. *Id.*

The Department's own rules define "able to work" and "available for work":

> To be able to work a claimant must have the physical and mental ability to perform the usual duties of his customary occupation or the usual duties of other work for which he is fitted by training, experience, or capability and which is gainful employment engaged in by others as a means of livelihood. The burden of establishing ability to work is on the claimant, but there will be no presumption that a claimant is not able to work.

Minn.R. 3305.0400 (1991).

> [A] claimant is considered available for work only if he is ready and willing to accept full-time suitable work. There must be no restrictions, either self-imposed or created by circumstances, which prevent accepting full-time work.

Minn.R. 3305.0500 (1991).

Applying the above definitions, the Commissioner's representative adopted the ref-

---

**2.** We also note, however, that when an employer such as Medical Concepts hires an employee under these circumstances, that employer's account should not be charged for the benefits subsequently paid to the employee.

eree's findings and decision that Valenty was unavailable for work between October 4 and 15, 1991. The referee relied upon Valenty's medical condition, which had a bearing on her ability to work during those weeks. *See* Minn.R. 3305.0400. The Commissioner's representative concluded that because of Valenty's inability to work during those two weeks, she was not eligible to receive benefits for that period.

■ We conclude the record does not support a determination that Valenty was unavailable for/unable to work between October 4 and 15, 1991. Valenty testified that she actively searched for work and applied for 11 positions during that period. (She actually found employment as a dental assistant in late October.) She also specifically testified that she could and would have worked as a dental assistant (in suitable employment) during that period, despite her pain.

## DECISION

Valenty's brief attempt at unsuitable work during her period of unemployment does not disqualify her from receiving unemployment benefits because her total weekly wages received from that unsuitable job were less than the amount of her weekly unemployment benefit. Although the Commissioner's representative correctly determined that Valenty was unavailable for work on October 2 and 3, 1991, the record demonstrates that Valenty was able to work/available for work between October 4 and 15, 1991.

Affirmed in part and reversed in part.

### SCHUMACHER, Judge (dissenting).

I respectfully dissent and would affirm the Commissioner's denial of unemployment benefits.

When Valenty was laid off from her full-time employment as a dental assistant, she became unemployed and was entitled to receive unemployment compensation benefits. Thereafter, however, Valenty accepted full-time employment at Medical Con-

cepts. When Valenty began that full-time employment, her entitlement to unemployment benefits ceased.

Valenty voluntarily quit her job with Medical Concepts, claiming that she quit because of her back injury. Valenty argued that she was entitled to receive unemployment benefits pursuant to the "serious illness exception" to disqualification. *See* Minn.Stat. § 268.09, subd. 1(c)(2) (1990). The referee and Commissioner's representative considered this claim and, based upon the record and applicable law, properly concluded that the serious illness exception was inapplicable because Valenty did not make reasonable efforts to retain her job at Medical Concepts.

Now, for the first time on appeal, Valenty claims that she quit the job with Medical Concepts because the position was not suitable for her. Even if the issue of suitability is relevant in this situation, as the majority concludes, that issue was not raised below and therefore should not be considered for the first time on appeal. *See Wesley v. Durance Corp.*, 363 N.W.2d 858, 859 (Minn.App.1985) (citing *Eakman v. Brutger*, 285 N.W.2d 95, 97 (Minn.1979)). By determining that the job at Medical Concepts was unsuitable for Valenty, the majority has usurped the factfinding function assigned, appropriately, to the referee and Commissioner's representative.

The referee and Commissioner's representative found that Valenty was unavailable for work between October 2 and 15, 1991 because of her back injury. The record supports this finding. Valenty testified that she probably could not have worked during that time, as a result of her pain.

> This court will review the commissioner's fact findings in the light most favorable to the decision below and will not disturb them if there is evidence reasonably tending to sustain those findings.

*Ress v. Abbott Northwestern Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn.1989) (citations omitted). By reversing both the referee

and the Commissioner's representative on this issue, the majority has improperly "weigh[ed] the evidence and ma[d]e a determination as to where the preponderance lies." *Nyberg v. R.N. Cardozo & Brother,* *Inc.,* 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954).