Joan M. **VALENTY**, Respondent,

v.

**MEDICAL CONCEPTS DEVELOPMENT, INC.,** Respondent,

**Commissioner of Jobs and Training, petitioner, Appellant.**

**No. C0–92–974.**

Supreme Court of Minnesota.

July 23, 1993.

Minnesota Dept. of Jobs and Training, Kent E. Todd, St. Paul, for appellant.

Peter B. Knapp, St. Paul, for Valenty.

Medical Concepts Development, Inc., pro se.

## OPINION

GARDEBRING, Justice.

This case involves a review of an administrative determination that denied respondent Joan Valenty[1] unemployment compensation. The Minnesota Department of Jobs and Training ("Department") made an initial finding that respondent was disqualified from receiving unemployment benefits. This determination was affirmed after a hearing by an unemployment compensation judge ("referee") and affirmed again on appeal by a representative of the Commissioner of Jobs and Training ("Commissioner"). The court of appeals, in a split decision, reversed the Commissioner.

Respondent worked as a registered dental assistant for nearly ten years, until she became unemployed in the summer of 1991. She filed her first claim for unemployment compensation benefits in July 1991 and received benefits through September 1991. In the latter part of September, a job counselor at the Department told respondent about a job opening at Medical Concepts Development, Inc., ("Medical Concepts"). The job description called for "light manufacturing," and paid $6.00 an hour. Respondent had never done this type of work before and it paid less than two-thirds of the wage she earned as a dental assistant.

In deciding to apply for the job, respondent was concerned about the lower pay, her unfamiliarity with the type of work involved, and her physical ability to do the job. She had previously undergone two back surgeries and had experienced back problems for the preceding 12 years. Respondent testified at the hearing that the reason she took the job at Medical Concepts was that she believed the Department would cut off her unemployment benefits if

---

**1.** Although both Valenty and Medical Concepts Development, Inc., are listed as respondents in this case, this opinion will refer to Valenty as "respondent" and Medical Concepts Development, Inc. as "Medical Concepts."

she refused.[2]

Prior to beginning work at Medical Concepts, respondent completed application forms in which she disclosed her previous back problems, and also discussed them with company personnel. She began work on October 1 and for the first few hours she was assigned to apply adhesive patches to surgical drapes. Sometime after lunch, respondent was given the task of folding the surgical drapes, which caused her to bend repeatedly over a work table. By mid-afternoon, respondent's back was causing her pain. Respondent's supervisor inquired if she wanted to work overtime. Although there were different versions of the ensuing conversation, it is clear that respondent told her supervisor that the work hurt her back and that the work was not the type of work she wanted. She left the facility after having worked approximately five hours, and did not return to work at Medical Concepts.

On October 3, 1991, respondent visited her doctor's office, where a certified physician's assistant concluded that, while respondent was unable to work at employment that required "prolonged periods of standing and repeated bending and lifting motions," from October 1 to October 3, 1991 she was "physically capable of performing full-time work in her customary trade or occupation as a dental assistant * * *." During the next two weeks, respondent applied for some twelve dental assistant positions, and was offered such a position during the last week of October.

The Department determined that respondent was physically unable to work between October 1 and 3, 1991, and thus was ineligible for benefits during this time,[3] and

further that respondent had quit her job at Medical Concepts voluntarily and without good cause, and was thus disqualified from receiving further employment benefits.

The unemployment compensation judge in the matter ruled that respondent was unable to work between October 2 and 15, 1991, and that respondent quit her job at Medical Concepts without good cause attributable to her employer and thus was disqualified from receiving benefits. Both these determinations were affirmed by a representative of the Commissioner.

The court of appeals reversed, holding that respondent was able to work between October 4 and 15, 1991, and that she was not disqualified from receiving unemployment benefits after leaving her job at Medical Concepts within a short time because the job was not "suitable" under Minn.Stat. § 268.09, subd. 2 (1992). The question of whether the Medical Concepts job was "suitable" was not considered until the case was heard by the court of appeals. Nevertheless, the court of appeals considered the issue. The Commissioner apparently does not now argue that the job was indeed "suitable," under Minn.Stat. § 268.-09, subd. 2, only that its "suitability" is irrelevant where there is a voluntary quit.

Therefore, the main question raised by this appeal is whether a person otherwise eligible for unemployment benefits is disqualified if she accepts a job that is not a "suitable" job under Minn.Stat. § 268.09, subd. 2, and then leaves the job within a reasonable time but without just cause attributable to her employer.

The relevant portions of the applicable statute are as follows:

2. An individual is disqualified from receiving unemployment benefits if she fails to apply for or accept "suitable" work. Minn.Stat. § 268.09, subd. 2 (1992).

3. Inability to work disqualifies a person from receiving unemployment compensation benefits. Minn.Stat. § 268.08, subd. 1(3) (1992) provides in part:
  An individual shall be eligible to receive benefits with respect to any week of unemployment only if the commissioner finds that the individual:
  (3) was able to work * * *.

The phrase "able to work" is defined in Minn.R. 3305.0400 (1991):
  Subpart 1. **Generally.** To be able to work a claimant must have the physical and mental ability to perform the usual duties of his customary occupation * * *. The burden of establishing ability to work is on the claimant, but there will be no presumption that a claimant is not able to work.
  In this case, respondent's ability to work should be measured as to her ability to perform the job of a dental assistant.

Subd. 2. **Failure to apply for or accept suitable work or reemployment.** An individual shall be disqualified for waiting week credit and benefits during the week of occurrence * * * following the refusal or failure * * * if the commissioner finds that the individual has failed, without good cause, either to apply for available, *suitable* work of which advised by the employment office, or the commissioner or to accept *suitable* work when offered * * *.

(a) In determining whether or not any work is suitable for an individual, the commissioner shall consider the degree of risk involved to health, safety and morals, physical fitness and prior training, experience, length of unemployment and prospects of securing local work in the individual's customary occupation * * *.

Minn.Stat. § 268.09 (emphasis added).

The Commissioner bases her argument on a court of appeals case, *McDonnell v. Anytime Temporaries*, 349 N.W.2d 339 (Minn.App.1984). In *McDonnell*, the claimant reluctantly took a temporary clerical assignment from Anytime Temporaries and worked one day. Although the assignment was supposed to last two weeks, she told the temporary agency that she would not finish the job. When she subsequently filed a claim for unemployment benefits, the Commissioner ruled that she was disqualified from receiving any benefits because she separated from her employment without good cause attributable to the employer. The claimant argued that the job was not "suitable" within the meaning of Minn.Stat. § 268.09, subd. 2. She reasoned that since she would not have been disqualified for refusing the job, she should not be disqualified for quitting the same job. *Id.* at 341. The court of appeals disagreed: [T]he Commissioner correctly concluded the issue of suitability was irrelevant.

Unsuitability of the work is not a statutory exception to the voluntary quit provision, Minn.Stat. § 268.09, subd. 1(1) (Supp.1983).

*Id.*

The Commissioner contends that accepting respondent's argument would effectively allow a trial period for any new employee in an unsuitable job to determine whether the employee .found the job acceptable, without fear of losing unemployment benefits if the employee decided to quit. There is no doubt that this is true.

Despite the result in *McDonnell*, the court of appeals concluded in this matter that when a person receiving unemployment benefits accepts an unsuitable job, she will not be disqualified from receiving those benefits if she quits the job within a reasonable time. *Valenty v. Medical Concepts Dev. Inc.*, 491 N.W.2d 679, 683 (Minn. App.1992). We concur with the court of appeals.[4]

The rationale for our decision today is simple: a person receiving unemployment compensation benefits should not be penalized for taking an unsuitable job for a short time.[5] A contrary holding would discourage those persons receiving benefits from attempting any job that was not technically "suitable" within the statute. We view such a result as contrary to public policy.

This court has often stated that the unemployment compensation statute is remedial in nature and should be construed liberally to carry out the public policy of Minn.Stat. § 268.03 (1992) that unemployment compensation is paid only to those persons "unemployed through no fault of their own." *See e.g., Smith v. Employers' Overload Co.*, 314 N.W.2d 220 (1981); *Berzac v. Marsden Bldg. Maintenance Co.*, 311 N.W.2d 873, 875 (Minn.1981); *Hen-*

---

4. While an issue may arise in a future case as to what constitutes a "reasonable time" during which one may leave an unsuitable job without incurring the penalty of ineligibility, the five hours respondent worked at Medical Concepts is clearly reasonable.

5. One might even think of an "unsuitable" job held for so short a time as "temporary," within the meaning of Minn.Stat. § 268.09, subd. 1(a). Under this provision, leaving a "temporary" job is not considered a voluntary termination, and thus does not render the worker ineligible for unemployment benefits.

*drickson v. Northfield Cleaners,* 295 N.W.2d 384, 387 (Minn.1980). In light of this, the disqualification provisions of the statute should be construed narrowly. *Smith,* 314 N.W.2d at 222. We believe it sound public policy to extend a so-called trial period to those attempting unsuitable jobs.[6]

To do otherwise would inevitably deter those who might otherwise take such work. This result is obviously not consonant with the aim of the statute. A further salutary effect of our ruling is that if a claimant were to take such a job and decide to quit within a reasonable time, the state would be spared from paying benefits for that period.

Further, we believe that our ruling today may be seen as an extension of our thinking in *Sticka v. Holiday Village South,* 348 N.W.2d 761 (Minn.1984). There we concluded that an otherwise eligible worker was not disqualified from receiving unemployment benefits where she accepted and then quit two part-time jobs, because she remained partially unemployed. We said our conclusion was especially true where, as in this case, the job at issue was not "suitable employment." *Sticka,* 348 N.W.2d at 763 n. 1.

Finally, although the court of appeals affirmed the Commissioner's finding that respondent was unable to work between October 2 and 3, 1991, our review of the record shows that although respondent

was unable to work on those days at the Medical Concepts job, she would have been able to perform work at her usual position as a dental assistant. Therefore, we hold that respondent is due unemployment benefits for the period from October 2 to October 15, 1991.[7]

Affirmed in part, modified in part.

PAGE, J., took no part in the consideration or decision of this case.

---

**6.** Other states have considered this particular issue on very similar facts and have held that public policy dictates that when a person receiving benefits takes an unsuitable job and quits within a reasonable time, that person should not be disqualified from receiving benefits.

In *Wojcik v. Board of Review, Div. of Employment Security, Dep't of Labor and Indus.,* 58 N.J. 341, 277 A.2d 529 (1971), the claimant lost his job and began to receive benefits. After failing to find work he took a job that required physical exertion for which he was not suited. After finding that he quit the job voluntarily, the court addressed his contention that he should not be disqualified for quitting an unsuitable job five weeks after he started.

The question is whether a person who takes work he is not required to take should suffer the loss of unemployment benefits when he is unable to cope with that work. We do not believe he should. A contrary result would

inhibit persons who are temporarily unemployed from taking work which, although not commensurate with their former employment, is nevertheless gainful activity which serves the general public interest. * * * We do not believe a person should be penalized for so laudable an effort.

*Id.* at 345–46, 277 A.2d at 531 (citations omitted). *See also Wallace v. Department of Employment Security,* 134 Vt. 513, 365 A.2d 517, 519 (1976); *Herman v. Florida Dep't of Commerce,* 323 So.2d 608, 609 (Fla.Dist.Ct.App. 1975).

**7.** In light of our decision on the unsuitability of the Medical Concepts job for respondent, we do not reach the issue of whether respondent would have been entitled to unemployment benefits under the "serious illness exception" to the voluntary quit provision of the statute. *See* Minn.Stat. § 268.09, subd. 1(c)(2) (1992).