Ulanda D. WILEY, Relator,

v.

ROBERT HALF INTERNATIONAL, INC., Respondent,

Department of Employment and Economic Development, Respondent.

No. A12–2086.

Court of Appeals of Minnesota.

July 22, 2013.

Peter B. Knapp, Grant M. Borgen (certified student attorney), William Mitchell Law Clinic, St. Paul, MN, for relator.

Robert Half International, Inc., San Ramon, CA, respondent employer.

Lee B. Nelson, Amy R. Lawler, Department of Employment and Economic Development, St. Paul, MN, for respondent Department.

Considered and decided by CHUTICH, Presiding Judge; PETERSON, Judge; and SMITH, Judge.

## OPINION

CHUTICH, Judge.

Relator Ulanda Wiley challenges the unemployment-law judge's decision to deny her unemployment benefits. She contends that her work was not "suitable" as that term is defined in Minnesota Statutes section 268.035, subdivision 23a(g)(4) (2010), and therefore she is eligible for benefits. We affirm the unemployment-law judge's conclusion that, to be eligible under the unsuitability exception in Minnesota Statutes section 268.095, subdivision 1(3), an applicant must quit because the employment is unsuitable. Because substantial evidence does not support the unemployment-law judge's conclusion that Wiley's reasons for quitting were unrelated to the unsuitable nature of her temporary employment, however, we reverse the judge's determination that Wiley is ineligible for unemployment benefits.

## FACTS

In May 2011, Wiley began working for Robert Half International, Inc. (Robert Half), a temporary staffing agency. Robert Half placed Wiley at Handi Medical Supply (Handi) as a medical biller. Wiley began working on May 3, earning $14 per hour and working a minimum of 30 hours per week. She quit on May 27, 2011, less than thirty days after beginning the employment.

After Wiley quit her job, she applied for unemployment benefits from the Minnesota Department of Employment and Economic Development (department). The department determined that Wiley was ineligible for benefits. Wiley appealed the determination and an unemployment-law judge held a telephone hearing. At the hearing, Wiley testified that she quit her employment because she did not receive her paychecks on time and because her supervisor made her uncomfortable. The

unemployment-law judge determined that Wiley was ineligible for benefits, finding that "Robert Half quickly corrected any payment errors" and that "Wiley calculated that it would be to her financial benefit to be unemployed so that she could enroll in state and county programs to assist her financially." Wiley filed a request for reconsideration, and the judge affirmed the decision. Wiley brought a certiorari appeal.

In an unpublished decision, this court remanded the case to the unemployment-law judge to develop relevant facts and to consider whether Wiley meets the exception to ineligibility under Minnesota Statutes section 268.095, subdivision 1(3)—that she quit within 30 days of beginning employment because it was unsuitable. *Wiley v. Robert Half Int'l,* A11–1616, 2012 WL 2202977, at *4 (Minn.App. June 18, 2012). This court further ordered that the judge take into account the definition of unsuitable employment under section 268.035, subdivision 23a(g)(4). *Id.*

On remand, the unemployment-law judge held a second telephone hearing. Wiley participated with her counsel. The judge determined that Wiley quit employment that was unsuitable, but that she did not quit her employment *because* it was unsuitable. Accordingly, the judge concluded that she was not eligible under the unsuitability exception. Upon request for reconsideration, the unemployment-law judge affirmed his previous decision. This certiorari appeal follows.

### ISSUES

I. Does Minnesota Statutes section 268.095, subdivision 1(3), require that, to be eligible for unemployment benefits, an applicant quit because employment was unsuitable?

II. Does substantial evidence support the unemployment-law judge's finding that Wiley did not quit because her employment was unsuitable?

### ANALYSIS

 We may remand, reverse, or modify a decision of the unemployment-law judge if the substantial rights of the applicant were prejudiced because the findings, conclusions, or decision are affected by an error of law or are unsupported by substantial evidence. Minn.Stat. § 268.105, subd. 7(d) (2012). "This court views the [unemployment-law judge's] factual findings in the light most favorable to the decision," defers to the unemployment-law judge's credibility determinations, and "will not disturb the [unemployment-law judge's] factual findings when the evidence substantially sustains them." *Peterson v. Nw. Airlines, Inc.,* 753 N.W.2d 771, 774 (Minn.App.2008), *review denied* (Minn. Oct. 1, 2008).

### I. Unsuitable Employment Exception

Wiley contends that she is entitled to unemployment benefits because her job with Robert Half was unsuitable. Whether a job is suitable for an applicant is a legal question, which this court reviews de novo. *Valenty v. Med. Concepts Dev., Inc.,* 491 N.W.2d 679, 682 (Minn.App.1992), *aff'd in part, modified in part,* 503 N.W.2d 131 (Minn.1993).

This appeal centers on the interpretation of Minnesota Statutes section 268.095, subdivision 1(3), and section 268.035, subdivision 23a(g)(4). We review matters of statutory construction de novo. *Lee v. Fresenius Med. Care, Inc.,* 741 N.W.2d 117, 122 (Minn.2007). "A court must read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Swanson v. Brewster,* 784 N.W.2d 264, 274 (Minn.2010) (quotation

omitted). If the meaning of a statute is unambiguous, this court follows its plain language. *Brua v. Minn. Joint Underwriting Ass'n,* 778 N.W.2d 294, 300 (Minn. 2010). A statute is ambiguous when its language is subject to more than one reasonable interpretation. *Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000).

We are required to construe and to apply the unemployment-benefit statutes "in favor of awarding unemployment benefits." Minn.Stat. § 268.031, subd. 2 (2012). And "any statutory provision that would preclude an applicant from receiving benefits must be narrowly construed." *Id.*

Relevant to the present case, an applicant for unemployment benefits is ineligible if he or she quits work unless "the applicant quit the employment within 30 calendar days of beginning the employment because the employment was unsuitable for the applicant." Minn.Stat. § 268.095, subd. 1(3). Employment is unsuitable if "the employment is with a staffing service and less than 45 percent of the applicant's wage credits are from a job assignment with the client of a staffing service." Minn.Stat. § 268.035, subd. 23a(g)(4).[1] Wage credits are "the amount of wages paid within an applicant's base period for covered employment." Minn. Stat. § 268.035, subd. 27 (2010). The base period is "the last four completed calendar quarters before the effective date of an applicant's application for unemployment benefits." Minn.Stat. § 268.035, subd. 4(a) (2010).

▆ Here, it is undisputed that Wiley's employment was unsuitable as a matter of law. Wiley quit within the 30–day requirement and none of Wiley's base period wage credits were from a job assignment with the client of a staffing service. Therefore, the issue on appeal is whether section 268.095, subdivision 1(3), specifically requires that Wiley quit *because* her job was unsuitable as defined by section 268.035, subdivision 23a(g)(4). Wiley argues that because her employment with Robert Half met the definition for unsuitable employment, she automatically qualifies for benefits. In other words, Wiley contends that the statute does not require a causal relationship between her quitting the employment and its unsuitability.

We disagree and find that the plain language requires us to read section 268.095 and section 268.035 together. Section 268.095 provides exceptions for when a petitioner may be eligible for unemployment benefits despite having quit her previous employment. Subdivision 1(3) explicitly and unambiguously requires that the petitioner quit the employment *because* it is unsuitable. Minn.Stat. § 268.095, subd. 1(3). Then, to determine whether the employment is unsuitable, one must read the definitions in section 268.035, subdivision 23a.[2] Wiley cannot

1. Wiley cites to the 2011 statutory supplement, which provides that employment is not suitable if less than 25 percent of the wage credits are from a staffing service. Minn. Stat. § 268.035, subd. 23a(g)(4) (Supp. 2011). Absent exceptions that do not apply here and unless otherwise specified in the act, the effective date of a legislative enactment is August 1. Minn.Stat. § 645.02 (2012). Because Wiley was determined to be ineligible for unemployment benefits on July 1, 2011, her claim is governed by the 2010 statute.

2. It appears that the department presented this argument in Wiley's previous appeal to this court. There, this court stated that it "can find no basis for [the department's] argument that the two definitional provisions must be read and applied in tandem rather than separately, as the text suggests." *Wiley,* 2012 WL 2202977, at *3. But it reserved its final ruling on the issue because the department had "not had a full opportunity to brief this issue because it was not addressed at the evidentiary hearing and the unemployment

rely solely on the definition in section 268.035, subdivision 23a(g)(4), because, when read alone, it contains no ineligibility exception. Logically, these two sections must be construed together and section 268.095, subdivision 1(3), requires a causal relationship between the unsuitability of the employment and the applicant's reason for quitting. The unemployment-law judge did not err in interpreting the statutes accordingly.

Wiley argues that, under this interpretation, no applicant could meet this exception because no one would quit her employment specifically because it was with a staffing service and because less than 45% of her wage credits are from a job assignment with the client of that staffing service. *See* Minn.Stat. § 268.035, subd. 23a(g)(4). We find no reason to read the statute so narrowly. *See* Minn.Stat. § 268.031, subd. 2 (stating that the chapter "must be applied in favor of awarding unemployment benefits"). The definition in section 268.035, subdivision 23a(g)(4), simply defines a temporary job with a staffing service that is with a new employer or in a new employment field for the applicant. Accordingly, this exception supports the policy rationale of encouraging those who are unemployed to attempt a new job outside of their usual field of work or to accept part-time or temporary employment without fear of losing their eligibility for unemployment benefits. *See Valenty*, 503 N.W.2d at 135 (recognizing that allowing a trial period in an unsuitable job allows an unemployed person to determine whether the job is acceptable without fear of losing current unemployment benefits).

In addition, we conclude that the plain language of section 268.095, subdivision 1(3), does not require that the employment's unsuitability be the sole or even primary reason why the employee quit.

To qualify under the exception, the employment's unsuitability must be one of the reasons an employee chooses to leave the employment. If the employment is unsuitable and the employee quits at least in part because it is unsuitable, the employee is eligible for benefits. *Cf. Hanson v. I.D.S. Props. Mgmt. Co.*, 308 Minn. 422, 424–25, 242 N.W.2d 833, 835 (1976) (stating that "good cause attributable to the employer" need not be the employee's only reason for quitting to qualify for that exception to ineligibility); *Burtman v. Dealers Disc. Supply*, 347 N.W.2d 292, 294 (Minn.App.1984) ("The law does not require that cause attributable to the employer be the sole reason for termination."), *review denied* (Minn. July 26, 1984).

## II. Wiley Quit Because Employment was Unsuitable

■ Wiley alternatively argues that she quit because the temporary employment was unsuitable. We view the unemployment-law judge's factual findings in the light most favorable to the decision and will not disturb them "when the evidence substantially sustains them." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn.App.2006).

The unemployment-law judge found that Wiley quit her temporary employment position because of payroll issues and conflicts with her supervisor, and to restore her government benefits. Substantial evidence in the record supports these findings. The judge further concluded that Wiley's payroll issues and conflicts with her boss were "not questions of suitability." We disagree. Wiley's frustrations with her position at Handi Medical related to her employment through a temporary staffing agency with a new employer,

law judge did not make findings on the suitability of Wiley's employment." *Id.*

which section 268.035 defines as unsuitable employment.

Wiley testified that she was uncomfortable with the lack of training that she received and with the multiple lines of communication that existed as a temporary employee. Wiley only heard feedback on her performance at Handi Medical through her Robert Half contacts. Because her supervisor at Handi Medical would not directly communicate with her, Wiley was forced to communicate with her Handi Medical supervisor through her supervisor at Robert Half. Wiley also consistently testified that she was frustrated because she was not being compensated in a timely manner. To resolve her payroll issues, Wiley worked with both the payroll department at Handi Medical and the customer service department at Robert Half. Because she was working with two separate entities, she was not fully compensated for her first week of work at Handi Medical for nearly a month. Wiley also testified that she was aware that no possibility existed that her temporary employment with Handi Medical could become a permanent position and that this was also a consideration in quitting the temporary position.

We acknowledge Wiley's testimony that she occasionally had payroll issues at her previous full-time job that she was able to resolve. Her payroll issues while working at Handi Medical, however, were much greater and took more time and effort to resolve than any payroll issues she experienced in a traditional employment setting. Wiley also testified that her co-workers told her that "a lot of people did not get along with [the supervisor] because of her personality," but her complaints about her supervisor at Handi went beyond a mere personality conflict. Wiley's frustration was caused by disconnected lines of communication that resulted from working through a temporary staffing agency and trying to communicate with her supervisor at Handi Medical through her contact at Robert Half.

Because her payroll and supervisor issues were a direct result of the unsuitable nature of her temporary employment, substantial evidence did not support the unemployment-law judge's conclusion that Wiley's issues with the position were "not questions of suitability." We conclude that Wiley quit, at least in part, because her employment was unsuitable.

### DECISION

Minnesota Statutes section 285.095, subdivision 1(3), requires that an employee quit because employment is unsuitable to be eligible for unemployment benefits. Wiley quit in part because of problems with her paychecks and communicating with her supervisor at Handi Medical. Because substantial evidence does not support the unemployment-law judge's conclusion that these reasons were unrelated to the unsuitable and temporary nature of her employment, we reverse.

**Reversed.**