**Ulanda WILEY, Relator,**

v.

**DOLPHIN STAFFING—DOLPHIN CLERICAL GROUP,**
**Respondent,**

**Department of Employment and Economic Development,**
**Respondent.**

**No. A12–0383.**

Court of Appeals of Minnesota.

Nov. 13, 2012.

Review Denied Jan. 29, 2013.

Benjamin L. Weiss, Southern Minnesota Regional Legal Services, Inc., St. Paul, MN, for relator.

Dolphin Staffing—Dolphin Clerical Group, Minneapolis, MN, for respondent.

Lee B. Nelson, Amy R. Lawler, Minnesota Department of Employment and Economic Development, St. Paul, MN, for respondent Department of Employment and Economic Development.

Considered and decided by KALITOWSKI, Presiding Judge; HALBROOKS, Judge; and KLAPHAKE, Judge.*

## OPINION

HALBROOKS, Judge.

Relator Ulanda Wiley challenges the decision of an unemployment-law judge (ULJ) that she is ineligible to receive unemployment benefits, arguing that she meets the exception to benefit ineligibility under Minn.Stat. § 268.095, subd. 1(3). We reverse the ULJ's determination that Wiley did not quit her position within 30 days of beginning employment. Because the ULJ did not determine whether Wiley quit because her temporary position was unsuitable, we remand for further proceedings.

## FACTS

On August 9, 2011, Wiley began working for respondent Dolphin Staffing, Inc., a temporary staffing service. She was assigned to a six-week project as an insurance billing associate at Medtox. On September 8—her 30th day with Dolphin [1]— Wiley gave two weeks' notice of quitting.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Wiley's days of employment are calculated by excluding the first and including the last day. *See* Minn.Stat. § 645.15 (2010) (providing for computation of time). As a consequence, September 8 was her 30th day at Dolphin.

Her last day of scheduled employment was September 23.

Dolphin administers an attendance policy that requires supervisor approval and one week's notice for all absences. An absence is unexcused if it fails to meet these criteria. It is also company policy to "verbally counsel" an employee after the third and fourth attendance violations and to terminate an employee after the fifth violation occurring within a rolling six-month period.

During her time at Dolphin, Wiley accumulated several unexcused absences. On August 31, Wiley left work early because she was sick. On September 1, Wiley had an approved partial absence to take one of her children to the doctor for a school-required physical. But Wiley did not show up to work that day. On September 6, Wiley notified Dolphin that she would be late to work the next day because she had to attend a last-minute conference at her daughter's school. Dolphin employee Amanda Cooper reprimanded Wiley and warned that any future absences would require Wiley to sign a written warning. Wiley accrued two unexcused absences the following day: first, when she arrived late after the school conference and, second, when she left work early to respond to an urgent call from her childcare provider, which resulted in Wiley taking her infant to the emergency room. That day, Wiley left a voice-mail message for Dolphin, indicating she would not sign a written warning.

On September 8, Dolphin employee Cara Schwartz telephoned Wiley to report that Medtox wanted her to work an additional month. Wiley explained that she did not think that she could commit to an additional month because family obli-

gations as a single parent were keeping her from working a consistent schedule. When Schwartz asked whether Wiley could commit to two weeks' notice and finish on September 23, Wiley said that she could.[2]

On September 13, Wiley tried to contact Cooper to discuss withdrawing her decision to quit. When Wiley was unable to reach Cooper, she e-mailed two other Dolphin representatives, asking to continue her employment with an accommodation to the attendance policy. The next day, Cooper telephoned Wiley and reiterated the attendance policy; she finished the conversation by referring Wiley to the human-resources department. On September 20, Wiley sent an e-mail to Cooper, explaining that a human-resources representative reiterated the attendance policy and told her that any further time off would be unexcused. Wiley also inquired about her request to withdraw her notice, to which Dolphin had not responded. Later that day, Cooper confirmed with Wiley that her notice had been accepted and that her last day of work would be September 23. On September 22, Wiley notified Dolphin that she would miss her last two days of work because two of her children were sick.

After leaving Dolphin, Wiley applied for unemployment benefits with respondent Minnesota Department of Employment and Economic Development (DEED). DEED determined that Wiley is ineligible for benefits. Wiley appealed. After an evidentiary hearing, the ULJ affirmed DEED's determination, concluding that Wiley quit her employment with Dolphin and did not qualify for benefits under (1) the good-reason-caused-by-an-employer exception, (2) the 30–day unsuitability ex-

**2.** Dolphin requires two weeks' notice of quitting for employees to remain eligible for re-hire.

ception, or (3) the loss-of-childcare exception. The ULJ affirmed the decision upon reconsideration. This certiorari appeal follows.

## ISSUE

Did the ULJ err in determining that Wiley did not quit unsuitable employment within 30 days of beginning that employment?

## ANALYSIS

When reviewing the decision of a ULJ, we may affirm the decision, remand the case for further proceedings, or reverse or modify the decision if substantial rights have been prejudiced because the findings, inferences, conclusions, or decision are affected by an error of law or are unsupported by substantial evidence in the entire record. Minn.Stat. § 268.105, subd. 7(d)(4)-(5) (2010). We view factual findings in the light most favorable to the decision and defer to the ULJ on credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn.App.2006).

Wiley argues that she is eligible for unemployment benefits because she quit unsuitable employment within 30 days of her start date. A quit from employment generally disqualifies an applicant from receiving unemployment benefits unless one of ten statutory exceptions applies. Minn. Stat. § 268.095, subd. 1 (2010). One of the exceptions addresses benefit eligibility when "the applicant quit the employment within 30 calendar days of beginning the employment because the employment was unsuitable for the applicant." *Id.*, subd. 1(3).

We first address the issue of the date that Wiley quit. Minn.Stat. § 268.095, subd. 2(c) (2010), provides that an employee who seeks to withdraw a previously submitted notice of quitting is considered to have quit if the employer refuses to allow withdrawal of notice. While the statute furnishes substantive definitions of what conduct constitutes a quit, it does not define when that quit occurs—upon notice, when withdrawal of notice is refused, or on the last day of employment.

The ULJ found that Wiley quit after 30 days of her start date. Wiley argues that she quit on September 8, the day that she gave two weeks' notice of quitting. September 8 is within the 30–day period. But DEED contends that Wiley quit on her last day of scheduled work, September 23, a date beyond 30 days. In so arguing, DEED favors a construction of Minn.Stat. § 268.095, subd. 2, in which a quit is interpreted as occurring on the last day of employment.

This court reviews matters of statutory construction de novo. *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 122 (Minn.2007). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010). If the meaning of a statute is unambiguous, we interpret the statutory text according to its plain language. *Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn.2010). When a statute is ambiguous, we apply other canons of construction to discern the legislature's intent. *Id.* A statute is ambiguous when the language therein is subject to more than one reasonable interpretation. *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). Legislative intent may be ascertained by considering, among other matters, the necessity and purpose of the law and the consequences of a particular interpretation. Minn.Stat. § 645.16(1), (4), (6) (2010). This court is further required to construe and apply the unemployment-benefit statutes "in favor of awarding unemployment benefits." Minn.

Stat. § 268.031, subd. 2 (2010). And "any statutory provision that would preclude an applicant from receiving benefits must be narrowly construed." *Id.*

The plain language of Minn.Stat. § 268.095 (2010) does not specify when a quit is deemed to have occurred. As this case demonstrates, the 30–day unsuitability exception is susceptible of more than one reasonable meaning. Under Wiley's interpretation, a quit occurs when the employee gives notice of quitting (which, in this case, falls within 30 days). Under DEED's interpretation, a quit occurs on an employee's last day of work (which, in this instance, is beyond 30 days).

To aid our understanding of the necessity and purpose of the 30–day unsuitability exception, this court has looked to *Valenty v. Med. Concepts Dev., Inc.*, 503 N.W.2d 131 (Minn.1993). In establishing the common-law unsuitability exception to benefit ineligibility, the *Valenty* court reasoned: "[A] person receiving unemployment compensation benefits should not be penalized for taking an unsuitable job for a short time." 503 N.W.2d at 134. We recognize that today's statutory exception, like its common-law counterpart, is designed to allow an individual who is unemployed to take temporary employment without losing benefit eligibility if that employment turns out to be unsuitable. Consequently, we must resolve whether the legislature intended "30 days" in Minn.Stat. § 268.095, subd. 1(3), to mean the time frame in which an employee must altogether leave employment or simply give notice of quitting when the employment is unsuitable. DEED's proposed construction of the exception to ineligibility would require an employee who is subject to a two-week-notice policy to identify whether that employment is unsuitable and to give notice of quitting within her first 16 days on the job. In contrast, an employee would have 30 days to make the same determination when an employer does not request any advance notice of quitting. We also note that under DEED's statutory interpretation, an employee who gives timely notice but continues working beyond 30 days at the employer's request—perhaps while a replacement is sought—would lose her benefit eligibility. It is implausible that the legislature intended different time frames to apply to employees based on the varying policies and needs of their respective employers.

We therefore construe the 30–day unsuitability exception as allowing an employee 30 days in which to identify unsuitability and to give notice of separation from employment. We hold that for purposes of the 30–day unsuitability exception, an employee who gives notice of quitting to an employer in advance of separating from employment is deemed to have quit at the time of notice. Accordingly, we reverse the ULJ's determination that Wiley did not quit employment within 30 days from her start date.

■ We next address Wiley's argument that she quit unsuitable employment and, therefore, falls under the 30–day unsuitability exception. There is no dispute that Wiley's position at Dolphin was unsuitable as a matter of law. Pursuant to the unemployment-benefits statutes, employment with a temporary staffing agency is unsuitable if "less than 25 percent of the applicant's wage credits are from a job assignment with the client of a staffing service." Minn.Stat. § 268.035, subd. 23a(g)(4)(Supp.2011). While the ULJ did not address the issue of suitability, evidence that Wiley lacked sufficient wage credits from a staffing service was properly before the ULJ. Wiley offered this evidence at the evidentiary hearing precisely because of its relevance to a suitability determination under subdivision 23a(g)(4).

Because the ULJ did not reach the issue of whether Wiley quit because the employment was unsuitable, we remand for a determination of that question.

## DECISION

Because Wiley is deemed to have quit employment when she gave notice of quitting, we reverse the ULJ's determination that she did not quit employment within 30 days of her start date. We remand to the ULJ to allow development of the relevant facts and to determine whether Wiley quit because the employment was unsuitable, as required for application of the exception to ineligibility under Minn.Stat. § 268.095, subd. 1(3).

**Reversed and remanded.**