*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0225**

Diane Quick,
Relator,

vs.

Polar Semiconductor, Inc.,
Respondent,
Department of Employment and Economic Development,
Respondent.

**Filed October 14, 2014
Affirmed
Stauber, Judge**

Department of Employment and Economic Development
File No. 31602690-3

Edward F. Rooney, Minneapolis, Minnesota (for relator)

Polar Semiconductor, Inc., Bloomington, Minnesota (respondent employer)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

**U N P U B L I S H E D  O P I N I O N**

**STAUBER**, Judge

On certiorari review from an unemployment-law judge's (ULJ's) decision dismissing relator's appeal as untimely, relator argues that (1) her appeal from a

determination of ineligibility based on her reason for quitting was not untimely because the Department of Employment and Economic Development (DEED) had not yet ruled on the companion issue of whether she was able to work and was actively seeking work; (2) her submission of responses to questions before the appeal deadline constituted an appeal under Minn. Stat. § 268.103, subd. 2(b) (2012); and (3) DEED sent relator documents containing erroneous information that led her to believe she no longer needed to appeal from the determination of ineligibility. We affirm.

## FACTS

In August 2013, relator Diane Quick quit her job at Polar Semiconductor, Inc. Relator asserts that she quit because she was physically unable to do her job any longer as a result of injuries she sustained in a 2008 car accident. On September 1, 2013, relator applied for unemployment benefits. On September 20, 2013, respondent DEED issued a determination of ineligibility under Minn. Stat. § 268.085 (2012), stating that relator had "not provided a medical statement completed by a medical provider which would establish that she is able to work." Ultimately, relator obtained a final decision from the ULJ on January 10, 2014, finding that she was eligible for benefits because she was available for and actively seeking work. On September 24, 2013, DEED issued a separate determination of ineligibility under Minn. Stat. § 268.095 (2012), stating that relator was not eligible for benefits because she quit employment for personal reasons and that the determination would become final unless an appeal was filed by October 14, 2013. As to this determination, the ULJ ultimately affirmed a decision dismissing an

2

appeal from it as untimely. As will be described below, the path to these determinations was long and confusing.

On or about September 24, 2013, relator faxed DEED a medical statement signed by her physician stating that relator was able to work with certain restrictions. On September 26, 2013, DEED issued an "amended determination of eligibility" stating that, under Minn. Stat. § 268.085, relator was "available for and actively searching for gainful employment" and that she had "provided a medical statement." The letter also stated that "[t]he applicant is eligible for unemployment benefits for the period from 09/08/2013 through 09/21/2013 if all other requirements are met," and that relator had "0 pending issue(s) that may affect [her] eligibility for benefits."

But on September 30, 2013, DEED issued a "notice of nullification." The letter stated that "[t]his determination is being issued to cancel the determination dated 09/26/2013." Under "Additional Notes," the letter stated that "[y]ou have 1 pending issue(s) that may affect your eligibility for benefits. Issue ID: 31660767-1 Ability-Availability-Actively Seeking." The letter did not advise relator of the consequences of nullification, her right to appeal, any deadlines for appeals, or any matters related to the September 24 determination of ineligibility.

Included with this letter was an "Unemployment Insurance Request for Information" form which stated that it was due October 6, 2013. Relator completed and returned the document. Relator was asked to identify her illness or disability, to which she responded "check doctor statement." She also affirmed that she was not unable to work, that she saw a doctor about her illness or disability, and that her illness or disability

3

restricts her from performing certain tasks. She also stated that she could not work twelve-hour shifts, perform heavy lifting, or stand for long periods of time, but that she could work eight-hour shifts, and could perform light assembly and packing. Relator listed the types of jobs she could perform and her efforts at obtaining suitable work.

On October 16, 2013, after failing to hear anything from DEED, relator retained an attorney who wrote a letter on her behalf stating that relator "is appealing because she meets all of the eligibility requirements to receive unemployment insurance benefits," and stating that relator "quit her long time employment because the demands of that job were far in excess of the physical activity restrictions that her physician . . . imposed on her." Sometime later, relator called DEED to inquire about the status of her appeal and was told that her appeal was late and that she must send a "Late Appeal—Request for Redetermination." Relator's attorney sent a letter requesting "redetermination" on November 4, 2013.

On November 20, 2013, DEED issued another determination of ineligibility under Minn. Stat. § 268.085 stating that "[t]here is no evidence to show [that relator] is able to perform paid employment." The letter further stated that relator "is not eligible for benefits beginning 09/01/2013" and that relator had "0 pending issue(s)" that would affect her eligibility for benefits. The letter stated that the determination would become final unless appealed by December 10, 2013.

On November 21, 2013, DEED issued an order stating that relator's November 4, 2013 appeal of the September 24 determination of ineligibility was untimely and, therefore, the ULJ lacked authority to hear and consider the appeal. On December 3,

4

2013, relator sent DEED two letters separately appealing the November 20 determination of ineligibility and the November 21 dismissal of her appeal.

On January 6, 2014, an evidentiary hearing was held before a ULJ on the issue of whether relator was able to work. The ULJ issued a determination on January 10, 2014, that relator was eligible for benefits because she was available for and actively seeking suitable employment. Meanwhile on January 9, 2014, DEED issued an order affirming the dismissal of relator's appeal of the September 24 determination of ineligibility. The ULJ found that relator's October 7 response to DEED's request for information "could not reasonably be construed as disagreeing with the determination" that she quit work for personal reasons and, therefore, did not constitute an appeal within the statutory time limit. The ULJ also found that, even if the October 16 letter from relator's attorney could be construed as an appeal of the September 24 determination, it was still two days late because the statutory deadline was October 14. This certiorari appeal followed.

## D E C I S I O N

This court may affirm the decision of the ULJ or may reverse or modify the decision if a petitioner's substantial rights were prejudiced because the ULJ's decision was "made upon unlawful procedure" or affected by an "error of law." 2014 Minn. Laws ch. 271, art. 1, § 1, at 1028-29 (to be codified at Minn. Stat. § 268.105, subd. 7(d)(3), (4) (2014)).[1] "[A] ULJ's decision to dismiss an appeal as untimely is a question of law,

---

[1] The 2014 amendment affected only subdivision 7(b), and subdivision 7(d) was unchanged. Because the amendment did not make any substantive changes to subdivision 7(d), the amended statute applies to pending litigation. *Braylock v. Jesson*, 819 N.W.2d 585, 588 (Minn. 2012).

subject to de novo review." *Godbout v. Dep't of Emp't & Econ. Dev.*, 827 N.W.2d 799, 802 (Minn. App. 2013).

The purpose of the unemployment-insurance program is to assist those who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2012). The chapter is remedial in nature and must be applied in favor of awarding benefits, and any provision precluding receipt of benefits must be narrowly construed. Minn. Stat. § 268.031, subd. 2 (2012). There is no burden of proof in unemployment-insurance proceedings and no presumption of entitlement to unemployment benefits. Minn. Stat. § 268.069, subd. 2 (2012). There is no equitable or common-law basis to allow or deny unemployment benefits. *Id.*, subd. 3 (2012).

## I.    **Whether a unitary appeal is required**

Relator argues that an initial determination on one issue does not "establish a deadline for appeal from that decision where [DEED] has not yet rendered a final determination on the companion issue of whether the applicant for benefits was able to work and was actively seeking work."

Appellant cites to *Emme v. C.O.M.B., Inc.*, 418 N.W.2d 176, 178 (Minn. 1988), which involved an appeal from the denial of partial summary judgment in a personal-injury case. In that case, our supreme court stated that Minnesota courts have a policy favoring unitary appeals in order to "conserve judicial resources" and to "expedite trial proceedings." *Id.* at 179. But it is clear from the opinion that the court was concerned with "[p]retrial appeals" that "cause disruption, delay, and expense" and "burden appellate courts" and prevent trial judges from "supervis[ing] pretrial and trial procedures

6

without undue interference." *Id.* These considerations are not present in an administrative appeal process that does not involve the judicial branch of government or pretrial procedures that, in some instances, may significantly lengthen the time and increase the cost of proceedings.

Appellant also relies upon *In re Welfare of G. (NMN) M.*, 533 N.W.2d 883, 884 (Minn. App. 1995), in which this court criticized juvenile delinquency proceedings where a child was required to appeal the adjudication of delinquency even before the district court had ordered a disposition, resulting in "the potential for separate appeals from the adjudication and disposition orders, contrary to the policy favoring unitary appeals." But again, this case presents different facts. Relator was determined ineligible for benefits on two separate bases, either one of which would result in her inability to receive benefits. Unlike in *G. (NMN) M.*, where the result of an appeal of the delinquency adjudication might make the disposition moot, here, one issue is not contingent upon resolution of the other.

Appellant also argues that the plain language of Minn. Stat. § 268.095, subd. 1(7), requires DEED to consider both an applicant's ability to work and reason for quitting at the same time. This court reviews matters of statutory construction de novo. *Wiley v. Dolphin Staffing—Dolphin Clerical Group*, 825 N.W.2d 121, 124 (Minn. App. 2012), *review denied* (Minn. Jan. 29, 2013). Minn. Stat. § 268.095, subd. 1(7), states that the ineligibility exception for quitting employment for medical necessity "raises an issue of the applicant's being available for suitable employment under section 268.085, subdivision 1, that the commissioner must determine." But nothing in this section states

7

that both issues must be resolved together or that the statutory appeal time limit is tolled until the issue of availability for work is resolved.

DEED asserts that nothing in Minn. Stat. § 268.101, which describes the procedures that DEED must follow, requires DEED to issue all-encompassing determinations of ineligibility. We agree. "While this court is not bound by an agency's conclusions of law, the manner in which an agency has construed a statute may be entitled to some weight when the statutory language is technical in nature and the agency's interpretation is one of longstanding application." *Lolling v. Midwest Patrol*, 545 N.W.2d 372, 375 (Minn. 1996). DEED asserts that it has handled determinations of ineligibility in this way since 1937. Moreover, DEED argues that addressing multiple issues within one determination could itself be confusing, particularly where an applicant is deemed eligible in one regard, but ineligible in another. Further we note that ineligibility issues may arise at different times. Therefore, we conclude that DEED was not required to issue a unitary determination on all issues related to relator's eligibility for unemployment benefits.

## II.     Whether the October 7 response was an appeal

Appellant also argues that her October 7 response to DEED's request for information qualified as an appeal under Minn. Stat. § 268.103, subd. 2(b), which provides that "[a] written statement delivered or mailed to the department that could reasonably be interpreted to mean that an involved applicant is in disagreement with a specific determination or decision is considered an appeal. No specific words need be used for the written statement to be considered an appeal." Relator asserts that her

8

responses to DEED could "reasonably be interpreted to mean" that she disagreed with the determination that she quit her job for personal reasons because the doctor's statement and her answers to the questions show that she was subject to certain working restrictions, and that these restrictions would have prevented her from working at her former job. Relator also contends that the act itself of responding to DEED's request for information showed that relator believed herself to be entitled to benefits.

But DEED asserts that relator's responses in no way address the issue of whether she quit for personal or medical reasons. We agree. Indeed, nothing in the October 7 statement addresses her reasons for quitting. Rather, her responses and the doctor's statement only address her medical condition, her limitations on work, and her efforts to find suitable work. Therefore, we conclude that the October 7 statement cannot reasonably be interpreted as an appeal of the September 24 determination of ineligibility. *Cf. Kangas v. Indus. Welders & Machinists, Inc.*, 814 N.W.2d 97, 100-01 (Minn. App. 2012) (concluding that relator's statement that he "did not commit theft by removing [his] own tool box" was an appeal of the determination that he was ineligible due to employment misconduct although he did not follow correct procedures for DEED's online appeal process).

### III.    Whether DEED misled relator

Relator also argues that DEED misled her as to the status of her appeal because the September 26 determination of eligibility stated that relator was "eligible for unemployment benefits" and because it said that she had "0 pending issue(s) that may affect [her] eligibility for benefits." Relator asserts that the time limit for filing her

9

request for reconsideration should have been tolled between September 26, when DEED issued the determination of eligibility, and September 30, when DEED issued its nullification of that determination. DEED concedes that the October 16 attorney letter functioned as an appeal of the September 24 determination of ineligibility. Therefore, if the appeal deadline was tolled for four days, relator's appeal was timely.

Relator relies upon *Stassen v. Lone Mountain Truck Leasing*, *LLC*, 814 N.W.2d 25 (Minn. App. 2012) for her argument that the time limit should have been tolled due to DEED's misleading statements. In *Stassen*, the issue was whether an appeal is untimely even though DEED mailed its notice to the wrong address because the employer updated its address on one part of DEED's website, but not on another part. 814 N.W.2d at 29-30. This court concluded that "the consequence of the mistaken addressing of the letter should not be borne by the party that followed DEED's website directions in updating its address," and therefore the time limit to appeal had not begun to run. *Id.* at 30. Relator interprets this holding to mean that where "the delay in appeal is due to a mistake by [DEED] an appeal which would otherwise be untimely may nevertheless be heard."

But DEED argues that the September 26 determination of eligibility was not misleading because, by DEED's definition of "pending," relator had no pending issues. Relying on a common dictionary definition of the term, DEED asserts that "pending" means "not yet decided." We agree with relator that the notifications she received from DEED indicating the presence or absence of "pending" issues related to her eligibility for benefits were confusing, but we conclude that the statements were not so misleading that the burden of the misunderstanding should be borne by DEED. Unlike in *Stassen*, relator

10

did not fully follow DEED's appeal instructions where her determination of ineligibility letter clearly stated that the determination would be final on October 14, 2013, and relator did not appeal the determination until October 16, 2013. Although we recognize that relator, as a lay person, may easily have misunderstood the communications she received from DEED, the law does not permit extensions of the 20-day time limit, and the time for appeal "is absolute." *Cole v. Holiday Inns, Inc.*, 347 N.W.2d 72, 73 (Minn. App. 1984). We must "strictly construe[]" the time limit for appeal, "regardless of mitigating circumstances." *King v. Univ. of Minn.*, 387 N.W.2d 675, 677 (Minn. App. 1986), *review denied* (Minn. Aug. 13, 1986) (holding that the time for appeal began to run from the time DEED mailed notice to the party, even though the party was represented by an attorney and DEED mailed notice to the attorney several days later). "There is no equitable or common law denial or allowance of unemployment benefits." Minn. Stat. § 268.069, subd. 3.

Although we affirm DEED's determination of ineligibility, we note a lack of clarity with which it communicates with applicants for benefits, which also results in confusion for this court on review. The unemployment-insurance statute is intended to assist persons who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1. Therefore, DEED should carefully consider how and what it communicates with applicants for benefits so as to fulfill its purpose as stated in law.

**Affirmed.**

11